JS 44 (Rev 09/10)

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

**Plaintiff(s):**

First Listed Plaintiff:
A. P. ;
**County of Residence:** Jackson County

**Defendant(s):**

First Listed Defendant:
William Jewell College ;
**County of Residence:** Clay County

**County Where Claim For Relief Arose:** Clay County

**Plaintiff's Attorney(s):**

Brette S. Hart (A. P.)
Harris and Hart, LLC
9260 Glenwood
Overland Park, Kansas 66212
**Phone:** 913-213-6990
**Fax:** 913-213-6991
**Email:** bhart@harrisandhart.com

Bradley L. Akins (A. P.)
Harris and Hart, LLC
9260 Glenwood
Overland Park, Kansas 66212
**Phone:** 913-213-6990
**Fax:** 913-213-6991
**Email:** bakins@harrisandhart.com

Matthew W. Greenberg (A. P.)
Harris and Hart, LLC
9260 Glenwood
Overland Park, Kansas 66212
**Phone:** 913-213-6990
**Fax:** 913-213-6991
**Email:** mgreenberg@harrisandhart.com

**Defendant's Attorney(s):**

**Basis of Jurisdiction:** 3. Federal Question (U.S. not a party)

**Citizenship of Principal Parties** (Diversity Cases Only)

    **Plaintiff:** N/A

    **Defendant:** N/A

**Origin:** 1. Original Proceeding

**Nature of Suit:** 448 Education (e.g., IDEA)

**Cause of Action:** 20 U.S.C. 1681, et seq.

**Requested in Complaint**

    **Class Action:** Not filed as a Class Action

    **Monetary Demand (in Thousands):** 75,000.00

    **Jury Demand:** Yes

    **Related Cases:** Is NOT a refiling of a previously dismissed action

---

**Signature:** /s/ Brette S. Hart

**Date:** 05/03/19

    If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.

A.P.,

      **Plaintiff,**

vs.                                             **Civ. No.**

**WILLIAM JEWELL COLLEGE,**
      <u>Serve President</u>:
      Dr. Elizabeth MacLeod Walls
      Office of the President
      Curry Hall
      500 William Jewell College Dr.
      Liberty, Missouri 64068

      **Defendant.**

## COMPLAINT AND JURY DEMAND

Plaintiff, A.P., by and through her undersigned attorneys, Harris and Hart, LLC, states and alleges the following as her Complaint against Defendant William Jewell College.

## INTRODUCTION

1.      This is a civil rights and negligence case brought by a former William Jewell College student, Plaintiff, who was raped by Z.P., a former William Jewell College (hereinafter "WJC") student and athlete, in her on-campus student housing residence hall.

2.      Prior to this rape, Defendant WJC had actual knowledge of Z.P.'s prior acts of sexual harassment and acted with deliberate indifference to this known harassment and inherent risk presented Plaintiff and other females on campus.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because this litigation involves matters of federal law including claims made under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq.*

4.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.     WJC is located in the Western District of Missouri, and the relevant facts occurred in the Western District of Missouri, thus venue in this Court is proper under 28 U.S.C. § 1931(b).

## PARTIES

6.     Plaintiff, is a citizen and resident of the State of Missouri, and at all times relevant to the misconduct by Defendant and Z.P., she was a student at WJC and resident of an on-campus residence hall.

7.     Defendant WJC is a private, for-profit, four-year college located in Liberty, Missouri, organized and existing pursuant to the laws of the State of Missouri and located within the Western District of Missouri.  At all times relevant to this Complaint, Defendant WJC was an educational institution within the meaning of Title IX pursuant to section   20 U.S.C. § 1681(c), and was a recipient of federal funds within the meaning of Title IX.

8.     At all times relevant hereto, individuals employed by Defendant were acting as employees, agents, and/or servants of Defendant WJC, such that Defendant WJC is legally liable and responsible for their negligent acts as below stated.

9.     At all relevant times herein Z.P. was a student-athlete at WJC and resided in an on-campus resident hall owned, operated, and under the control of Defendant WJC.

## GENERAL ALLEGATIONS

Student Recruitment and Freshman Report to Campus

10.     During the fall of 2016, Z.P. was recruited by WJC to play football for the 2017-2018 school year.

11.     During late 2016 or early 2017, Defendant WJC extended an offer to Z.P. to attend its college and play football.

2

12.     In response to this offer, in early 2017, Z.P. signed a Letter of Intent to play football for Defendant WJC.

13.     Upon information and belief, sometime in the fall/winter of 2016 or first part of 2017, Z.P. committed an act of a sexual nature on his high school campus in Texas resulting in Z.P. being barred from his high school campus and ordered to complete his senior year at an alternative school.

14.     Before Z.P. reported to the campus of WJC in the late summer of 2017, no one at WJC in the Admissions Department or other department performed a background check on or gathered a final copy of the high school file of Z.P.

15.     Had WJC performed a background check on or gathered a final copy of the high school file of Z.P., this would have shown that Z.P. committed a sexual act sufficient to violate his high school's policies resulting in his removal from his high school campus.

16.     Before the start of the 2017-2018 school year, Z.P., a freshman member of the WJC football team, reported to the WJC Campus to participate in early training/practice sessions with other members of the WJC football team.

17.     Z.P. was assigned by WJC to live on the second floor of Browning Hall, a co-ed dormitory residence hall owned, controlled, and operated by WJC.

18.     On or about August 19, 2017, Plaintiff reported as an incoming freshman to the WJC Campus.   Plaintiff was assigned by WJC to live on the third floor of Browning Hall dormitory.

William Jewell College Provides "Support" and "Assurances" to Incoming Freshman

19.     During the 2017 Freshman Orientation, members of WJC's administration and/or student ambassadors presented various presentations to the incoming freshmen.

3

20.    Topics discussed within these presentations included, but were not limited to: diversity and inclusion; sexual harassment/assault; anti-harassment; alcohol; Title IX rules, regulations, and compliance; and WJC Policies and Procedures.

21.    Incoming freshman were also required to watch at least two videos: one discussing obtaining consent before engaging in any sexual act with another individual (demonstrated by a cartoon video where offering tea is used in place of requesting to engage in sex or a sexual act) and the other describing Defendant WJC's knock and check policy (such videos which were approved by WJC).

22.    One purpose of these presentations was to provide assurances to incoming freshman that WJC was a safe and inclusive campus.

Pertinent Policies and Procedures

23.    At all pertinent times hereto, Defendant WJC's Anti-Harassment Policies and Grievance Procedures provided the following, in pertinent part (highlighted portions delineated by Plaintiff):

4

## ANTI-HARASSMENT POLICY

**I.    Policy Statement**

William Jewell is committed to maintaining an environment for all faculty, staff, students, and third-parties that is free of harassment, illegal discrimination, and unprofessional conduct. In keeping with that policy, William Jewell prohibits any form of harassment by or against any faculty, staff member, student, applicant for employment, customer, third-party supplier or any other person whether such harassment is lawful or unlawful (collectively the "William Jewell Community"). It is never justifiable to harass a member of the William Jewell Community because of their age, disability, gender, genetic information, national origin, race/color, religion, sex, sexual orientation, veteran status or any other status protected by law (collectively "protected statuses"). William Jewell does not tolerate harassment of any kind.

Harassment is counterproductive and does not serve the principles on which William Jewell operates. We respect the dignity and worth of all members of the William Jewell Community. Each member of the William Jewell Community should be free to develop fully his or her potential, neither hindered by artificial barriers nor aided by factors that are not related to merit.

William Jewell also prohibits unprofessional conduct and comments that may not amount to unlawful harassment. All members of the William Jewell Community are expected to use good judgment and to avoid even the appearance of impropriety in all their dealings with each other. Supervisory staff especially must exhibit the highest degree of personal integrity at all times, refraining from any behavior that might be harmful to their subordinates or William Jewell. Similarly, faculty members must demonstrate the utmost professionalism when interacting with students.

It is a violation of this policy to retaliate against any member of the William Jewell Community who reports or assists in making a complaint of harassment or who participates in the investigation of a complaint in any way.

William Jewell will thoroughly and promptly investigate all complaints of harassment in accordance with the Complaint Resolution Procedures. If an investigation confirms that harassment has occurred, William Jewell will take prompt and appropriate remedial action to prevent harassment, eliminate any hostile environment, prevent its recurrence, and correct its discriminatory effects on the victim and others, if applicable.

**III.    Definitions**

A.    Harassment

Harassment is generally defined as verbal, written, or physical conduct based on or motivated by an individual's protected status that unreasonably interferes with an individual's work or academic performance or creates a hostile work or educational environment by interfering with or limiting a person's ability to participate in William Jewell's educational programs and activities. Harassing conduct may take many forms, including verbal acts and name-calling, as well as nonverbal behavior, such as graphic and written statements, or conduct that is physically threatening, harmful, or humiliating. This policy provides more specific definitions of disability harassment, racial harassment, and sexual harassment as defined below.

5

D. Sexual Harassment

Sexual harassment is harassment motivated by a person's sex. Sexual harassment constitutes discrimination on the basis of sex, which is prohibited by Title IX of the Education Amendments of 1972 and its implementing regulations and Title VII of the Civil Rights Act and its implementing regulations.

Sexual advances, requests for sexual favors, and other verbal, physical, or visual conduct of a sexual nature constitute sexual harassment when:

- Submission to such conduct is made or threatened to be made, either explicitly or implicitly, a term or condition of an individual's employment or education
- Submission to or rejection of such conduct by an individual is used or threatened to be used as the basis for academic or employment decisions affecting that individual, or
- Such conduct has the purpose or effect of substantially interfering with an individual's academic or professional performance or creating what a reasonable person would perceive as an intimidating, hostile, or offensive employment, education, or living environment.

1. Some Forms of Prohibited Sexual Harassment

Sexual violence/assault is a form of prohibited sexual harassment. Sexual violence includes physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent because of his or her temporary or permanent mental or physical incapacity or because of his or her youth.

Some examples of sexual harassment include:

- A professor pressures a student for a dating, romantic, or intimate relationship
- Unwelcome touching, kissing, hugging, or massaging by staff members or fellow students
- A professor makes sexual innuendos or tells sexual jokes
- Obscene gestures
- Sexual intercourse by a man or woman upon a man or woman without consent
- Sexual touching with an object or body part, by a man or woman upon a man or woman, without consent
- Non-consensual video or audio-taping of sexual activity
- Knowingly transmitting a sexually transmitted disease to another
- Sexual hazing
- Date rape

V. Complaints

D. Resolution

If a complaint of harassment or retaliation is found to be substantiated, William Jewell will take appropriate corrective and remedial action. Students, faculty, and staff found to be in violation of this policy will be subject to discipline up to and including written reprimand, required training, fines, suspension, demotion, termination, or expulsion. Affiliates and program participants may be removed from William Jewell programs and/or prevented from returning to campus. Remedial steps may also include counseling for the complainant, academic, work, transportation, or living accommodations for the complainant, separation of the parties, and training for the respondent and other persons.

6

24.     Defendant WJC also had a policy in effect at Browning Hall requiring the resident assistants ("RAs") to check on the occupants of each dormitory room at or around midnight or 1:00 a.m. each morning to ensure that no individuals were in the rooms who were not authorized to be within the room. This policy was designed to ensure the safety and security of the WJC dormitory residents.

25.     Upon information and belief, the policy of checking each dorm room at or around midnight or 1:00 a.m. was performed by the RAs for approximately one week after school began during the fall 2017 semester and thereafter was never again done in Browning Hall prior to Plaintiff's rape by Z.P.

Z.P.'s First Reported Incident of Sexual Harassment

26.     On or before September 11, 2017, Z.P. used his cell phone or other mobile device to record two students engaged in consensual sexual intercourse. This recording was taken without the knowledge, consent, or permission of either of the individuals engaged in the act of intercourse.

27.     Z.P., standing outside the window of a dorm room, peered through a crack in the blinds and recorded the two individuals engaged in the act of intercourse

28.     After recording these individuals engaged in sexual intercourse, Z.P. electronically sent the video to the male participant engaged in the act of sexual intercourse. The male participant thereafter informed the female victim of the recording and showed her the same.

29.     Minutes after recording the two individuals having intercourse, Z.P. also sent and/or showed this recording to numerous players on the WJC football team and other students on the WJC Campus.

30.     On information and belief, Z.P. further published the video on a social media platform, believed to be SnapChat, making the same accessible to and viewed by countless individuals.

31.     Shortly after recording the individuals engaged in sexual intercourse, Z.P. showed the video to at least one Resident Director (RD) or Resident Advisor (RA) at Browning Hall dormitory as well as other WJC students present.

32.     Upon information and belief, each of these RAs or RDs reported this occurrence to Andrew Pratt, WJC's Anti-Harassment Coordinator/Title IX Coordinator, and/or other WJC officials or employees at or near the time they were shown the video.

33.     Andrew Pratt, along with Ernie Stufflebean, investigated this report, including arranging for other WJC employees to contact and interview the two individuals depicted in the recording as well as, it is believed, interviewed Z.P.  The case number assigned by WJC to this incident is 2017-008.

34.     Z.P., as a result of the sexual harassment recording incident, was not removed from campus and was not limited in his access to campus facilities.  He remained on campus and in Plaintiff's dormitory where he would sexually assault and rape Plaintiff approximately three weeks later.

35.     The female depicted in the non-consensual videotaping incident was not interviewed by members of WJC until approximately September 21, 2017, ten days after Z.P.'s actions.

36.     On or about October 6, 2017, Andrew Pratt and Ernie Stufflebean submitted a report documenting the investigation of Case # 2017-008 (non-consensual videotaping incident) to Anne Dema, Ph.D., Provost of WJC.

37.     Following her review of the report and evidence accompanying the same, Provost Dema determined that a preponderance of the evidence supports that Z.P. violated WJC's Anti-Harassment Policy in connection with this non-consensual video-recording of sexual activity.

38.     On October 17, 2017, approximately eleven days after receiving the report prepared by Andrew Pratt and Ernie Stufflebean and more than five weeks after Z.P.'s act of harassment relative to the unauthorized recording, Provost Dema placed Z.P. on full suspension until August 1, 2018. This suspension allowed for the possibility that Z.P. could return as a student to WJC.

Other Incidents of Unwanted Sexual Conduct by Z.P.

39.     Upon information and belief, following the football season during his senior year of high school, Z.P. committed an unauthorized sexual act on his high school campus involving and/or with a female at his high school. He was removed from his regular high school and forced to complete his high school education in an alternative schooling setting.

40.     Defendant WJC knew or should have known that Z.P. was placed in an alternative school setting to complete his high school courses.

41.     Defendant WJC knew or should have known that Z.P. committed an unauthorized sexual act on his high school campus so violative of those school safety and conduct procedures that it required removal from the high school campus for the remainder of his high school year.

42.     Defendant WJC did not know or did not question the reason for Z.P.'s failure to complete his high school education within the on-campus high school setting.

43.     Upon information and belief, another female student at WJC complained to WJC administrators, employees, mandatory reporters, or others in charge of student safety about additional violations of the WJC Anti-Harassment Policy committed against her by Z.P. The complained of acts of unwanted sexual conduct occurred between the time of the non-consensual recording incident and the rape of Plaintiff.

Other Incidents of Rape at William Jewell College

44.     According to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, 28 U.S.C. § 1092 *et seq.*, each year, William Jewell College is required to

publish crime statistics and security information, including reported rapes on campus. The reported rapes can only be excluded from the publication if, after full investigation by a sworn or commissioned law enforcement personnel, the sworn or commissioned law enforcement personnel makes a formal determination that the report is false or baseless.

45. According to Defendant WJC's published 2017 Annual Security and Fire Safety Report, in the two calendar years preceding Z.P.'s rape of Plaintiff A.P, there were six reported, on-campus housing rapes at WJC. Two during calendar year 2015 and four during calendar year 2016.

46. According to Defendant WJC's published 2018 Annual Security and Fire Safety Report, during calendar year 2017 (the year Plaintiff was raped by Z.P.), there were four reported, on-campus housing rapes at WJC.

47. During calendar years 2015, 2016, and 2017, Defendant WJC did not find or determine that any reported rape was "unfounded."

48. Additionally, during calendar year 2017, Z.P. raped Plaintiff while on campus and, based on information and belief, sexually harassed or assaulted at least one other female WJC student.

49. Despite knowledge of multiple on-campus reported (and not unfounded) rapes in 2015, 2016, and 2017, Defendant WCJ failed to incorporate and/or enforce security measures to prevent further on-campus sexual assaults and rapes thus creating a dangerous condition for females similarly situated as Plaintiff.

Z.P. Rapes A.P

50. On or about the late evening hours of September 30, 2017, or very early morning hours of October 1, 2017, during WJC's Homecoming weekend, Plaintiff and her roommate were

10

outside of their dorm room waiting for a friend to bring them food. Plaintiff and her roommate had consumed alcohol earlier in the evening.

51. Plaintiff saw and recognized Z.P., who resided in the same dormitory. Z.P. approached and gave Plaintiff a big hug which was unexpected, unwelcomed and not requested by Plaintiff. Z.P. told Plaintiff and her roommate that he had been drinking that evening and then entered the dormitory.

52. Shortly thereafter, Plaintiff and her roommate entered the dormitory and saw Z.P. sitting in the lobby on the stairs which blocked Plaintiff and her roommate's path to their room. Plaintiff told Z.P. that she and her roommate were going to their room to watch movies while Plaintiff and her roommate ate their food. Z.P. began following them to their room.

53. On the way to Plaintiff's room, Z.P. grabbed Plaintiff's buttocks. In response, Plaintiff told Z.P. to stop touching her and if he was looking for sex then he needed to just go to his own room because she was not interested in sexual activity with Z.P. Plaintiff's roommate witnessed this interaction and Plaintiff's specific request for Z.P. not to touch her and admonition regarding sexual activity.

54. When the three individuals entered Plaintiff's dorm room, Z.P. immediately jumped up and onto Plaintiff's bunk bed, without being invited to do so, while Plaintiff sat with her roommate and ate food on the floor. Plaintiff told Z.P. that he was not staying the night, but he could sit on her bed while she ate and they watched a movie.

55. After eating, Plaintiff got onto her bed and wrapped herself tightly in a blanket. At this time, she was clothed in a bra, underwear, shorts, tank top, and jacket. Z.P. was, at that time, still sitting on Plaintiff's bed watching a movie.

56. Z.P. grabbed at Plaintiff's breasts and she told him to stop. Plaintiff's roommate witnessed Plaintiff telling Z.P. not to touch or grab her and that she was not interested in having

11

sex with him. Plaintiff's roommate witnessed Plaintiff telling Z.P. that he could stay in the room to watch the movie but if he wanted any sexual activity he needed to leave because Plaintiff was not interested in any sexual activity with Z.P.

57. While watching the movie, Plaintiff fell asleep.

58. At some point in the middle of the night-time hours, Plaintiff woke up on her side and realized the blanket was unrolled, she was undressed and Z.P. was forcibly having vaginal intercourse with Plaintiff.

59. Plaintiff attempted to shove Z.P. off her but was unsuccessful as she was fading in and out of consciousness and Z.P. was physically much larger and stronger than Plaintiff.

60. Plaintiff came in and out of consciousness multiple times throughout this sexual assault and every time yelled out "NO! STOP! I DON'T WANT THIS!" and during her last state of consciousness saw Z.P. using her shirt to wipe semen off himself and Plaintiff.

61. During her states of consciousness while the assault was ongoing, Plaintiff tried to push Z.P. off her and continually told him to stop.

62. Plaintiff's roommate heard Plaintiff yelling "NO! STOP!" at various points during the night.

63. Plaintiff woke up the next morning completely nude lying on the bed. Z.P. had already left the room by the time Plaintiff woke up for the day, around 8:00 am.

64. On October 1, 2017, Plaintiff reported to Liberty Hospital and underwent a sexual assault forensic examination, otherwise known as a "rape kit".

65. On or about October 4, 2017, Plaintiff reported the rape to the Liberty, Missouri Police Department.

William Jewell College's Response to the Rape

66.     On or about October 2, 2017, Plaintiff emailed two of her professors apologizing for missing class.  In these emails, Plaintiff expressed that she was the victim of a sexual assault and had to go home to try and gather herself before returning to school

67.     On or about October 2, 2017, these WJC faculty professors emailed Andrew Pratt regarding the possible sexual assault by Z.P. against Plaintiff.

68.     On or about October 4, 2017, Andrew Pratt and Ernie Stufflebean met with Z.P. and informed Z.P. of the report filed against him.  Andrew Pratt further informed Z.P. that he was being placed on Partial Interim Suspension.  One of the terms of this Partial Interim Suspension is that Z.P. not participate in any WJC sponsored activities.  Defendant WJC assigned case number 2017-011 to the rape of Plaintiff.

69.     Following this meeting, Z.P. left with Mr. Stufflebean, Landon Jones (Campus Safety Director), and Alan Mulling (Campus Safety Officer).  The four individuals went to Browning Hall to gather Z.P.'s belongings before he was required to leave campus (another term of his Partial Interim Suspension).  Mr. Stufflebean then drove Z.P. to an off-campus apartment where he would be staying.

70.     On or about October 4, 2017, Plaintiff received an anonymous, disparaging "Sarahah" message in response to her reporting Z.P. to campus administrators and police (Sarahah is an anonymous messaging app on iOS and Android platforms).

71.     Additionally, during the evening of October 4, 2017, while in Browning Hall, Plaintiff heard men in her dormitory hallway banging on her door, screaming: "We are going to do you like [Z.P.] did you!"

72.     Z.P. violated the terms of his Partial Interim Suspension later in the evening on October 4, 2017, by attending a WJC sponsored off-campus movie event.

13

73.    On or about October 5, 2017, WJC, after learning of Z.P.'s violation of his Partial Interim Suspension, placed Z.P. on Full Interim Suspension.

74.    On or about October 5, 2017, Missy Henry, WJC Title IX Co-Deputy Coordinator, met with Plaintiff relative to Plaintiff's concerns over acts of retaliation and harassment on the evening of October 4, 2017 (the "Sarahah" message and banging/shouting in her dorm hallway).

75.    On or about October 6, 2017, Mr. Stufflebean picked up Z.P. from the apartment where he had been staying and brought him to the WJC Campus for a formal interview with Mr. Pratt and Mr. Stufflebean.  Upon information and belief, Z.P. was advised at this meeting that he had been placed on Full Interim Suspension due to violation of terms of his Partial Interim Suspension.

76.    On or about October 9, 2018, Plaintiff reported to Missy Henry that she believed she heard Z.P. with a known friend of his in the hallway of her dorm on October 8, 2017. Additionally, Plaintiff reported that Z.P., despite being on Full Interim Suspension, may have been in one of the classrooms this same day.

77.    On or about October 12, 2017, Andrew Pratt, Missy Henry, and Ernie Stufflebean, issued a report following their investigation, finding:

   a.   A preponderance of the evidence indicates that Z.P. engaged in vaginal intercourse with Plaintiff without her consent.

   b.   A preponderance of the evidence further supports that Z.P. groped Plaintiff's buttocks and chest without her consent.

   c.   A preponderance of the evidence supports that Z.P. violated the terms of the interim partial suspension when he attended a WJC-sponsored movie night.

78.    On or about October 13, 2017, Z.P. left Liberty, Missouri and, upon information and belief, returned to his home in Texas.

14

79.     On November 14, 2017, Provost Dema issued a permanent expulsion of Z.P. following her review of the report prepared by Andrew Pratt and Ernie Stufflebean.

80.     In addition to expelling Z.P. from WJC, Provost Dema announced a fine of $2,000 on Z.P., as solely determined by WJC, to be paid to WJC.  These funds were supposedly to allow for Plaintiff to receive counseling or support services.  However, if Plaintiff wanted to seek mental health treatment to deal with the ramifications of her rape, she was required to submit a proposal for treatment which, only if approved by Andrew Pratt, could be paid out of the $2,000 paid by Z.P.  If Mr. Pratt made the determination that the requested treatment was not valid, or from a provider not approved by Mr. Pratt, the money could not be withdrawn from the $2,000 account to pay for the requested treatment.  If the money went unused for a limited period of time, the money would revert back to WJC for its own discretionary use.

81.     On or about November 14, 2017, Plaintiff met with Provost Dema, Andrew Pratt, and another individual.  At this meeting, directed by Mr. Pratt, Plaintiff was informed of WJC's decision relative to her report of sexual assault.

82.     Additionally, Mr. Pratt informed Plaintiff of the available funds and the process for her use of the same.  To use the $2,000 to seek treatment, Plaintiff was required to first seek the approval of Mr. Pratt and according to Mr. Pratt, WJC would have access to any medical records generated in connection with Plaintiff's treatment.

83.     At the aforementioned meeting with Provost Dema, Andrew Pratt, and another individual, Plaintiff was also advised that she was not allowed to speak to anyone about the rape or WJC's investigation and handling of the rape, as it would be considered retaliation, and grounds for dismissal from WJC if she spoke to anyone other than a therapist or medical professional about the rape.

15

84.     Following the investigation and expulsion of Z.P., Plaintiff. sought a copy of the investigative report.  Her request was denied by Defendant WJC and she was told she could view the report only under the supervision of Defendant Andrew Pratt but could not have a copy of the investigative report to keep for her own records

85.     Additionally, following WJC's investigation and decision relative to the subject rape of Plaintiff, Missy Henry reached out to Plaintiff and urged Plaintiff to meet with WJC's Office of Counseling Services.

86.     On or about October 26, 2017, Plaintiff was contacted by Tricia Hagar, Ph.D., Director of Counseling Services at Defendant WJC, inquiring if Plaintiff was interested in an appointment with a therapist.  Dr. Hagar, via email communications, assisted Plaintiff in scheduling an appointment with a therapist in the WJC Office of Counseling Services.

87.     Plaintiff met with a counseling intern on two occasions, ending when the student advised Plaintiff that she was unable to provide the help Plaintiff required.

88.     At no point did the one licensed psychologist at the on-campus clinic attempt to meet with Plaintiff to offer her treatment or aid following the rape by Z.P.

89.     Plaintiff did request a copy of her records from her visits with the counseling intern but this request was initially refused, with WJC saying Plaintiff was not entitled to copies of same.

90.     Eventually, WJC did provide written notes of Plaintiff's limited visits but advised that they had destroyed the audio recordings made of Plaintiff's visits.

91.     Plaintiff did return to WJC in an attempt to continue her academics.  However, as referenced above, she was repeatedly intimidated by those in a position of authority at WJC. Defendant WJC's repeated attempts to discourage Plaintiff from seeking competent mental health treatment, from seeking counsel, and interacting with her in such a way that her word was not valuable enough for the administration to meaningfully protect her from the retaliation she endured

16

after reporting the rape, became so overwhelming to Plaintiff that she was unable to continue to education at WJC.

92.     Additionally, Plaintiff's rape became known to a large segment of the student population at Defendant WJC following her report of the same.  Public knowledge of this sexual assault became too much for Plaintiff to endure and, in combination with the aforementioned, resulted in Plaintiff's inability to continue her educational pursuits at Defendant WJC.

93.     Plaintiff. is currently in the process of seeking and obtaining medical and therapeutic treatment relative to her on-campus rape by Z.P.

**COUNT I**
**Violation of Title IX 20 U.S.C. § 1681(a)**

COMES NOW Plaintiff, and for Count I of her Complaint against Defendant William Jewell College, states and alleges as follows:

94.     Plaintiff hereby incorporates each of the preceding paragraphs as though fully set forth herein.

95.     By approximately September 11, 2017, Defendant WJC had actual knowledge of and was deliberately indifferent to known sexual harassment and sexual violence by Z.P. against female students at WJC, including a known and substantial risk that he would sexually harass and/or assault other female students.

96.     Defendant WJC had substantial control over both Z.P. and the facility in which his sexual assault of Plaintiff occurred

97.     Defendant WJC had the authority to take remedial action to correct the ongoing sexual harassment, sexual assaults, and sexual discrimination by Z.P., but failed to take any such action.

17

98.     Defendant WJC's response, or lack thereof, was clearly unreasonable in light of known circumstances.

99.     As a result, Plaintiff was subjected to physical sexual harassment, sexual assault, and sexual discrimination so severe, pervasive, and objectively offensive that she was denied access to educational opportunities and benefits.

100.    Defendant WJC, through its employees, agents, departments, and/or servants, had actual knowledge of, and was deliberately indifferent to sexual harassment that was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to the educational benefits or opportunities provided by WJC, in violation of Title IX.

101.    In particular, as a result of the September 30/October 1, 2017, sexual assault and rape, Plaintiff has suffered significant, severe, and ongoing emotional distress and her studies and education have suffered substantially.  As set forth above, Plaintiff has been forced to withdraw from her education at WJC.

102.    Plaintiff has suffered and continues to suffer damages as a result of Defendant WJC's violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a), as set forth above.

WHEREFORE, Plaintiff prays for judgment under Count I against Defendant William Jewell College for a sum in excess of $75,000, for her costs herein incurred, and for all other and further damages as may be appropriate or to which she may be entitled at law.

## COUNT II
## Attorney Fees

COMES NOW Plaintiff, and for Count II of her Complaint against Defendant William Jewell College, states and alleges as follows:

18

103.     Plaintiff hereby incorporates each of the preceding paragraphs as though fully set forth herein.

104.     Pursuant to 42 U.S.C. § 1988(b), Plaintiff, upon prevailing in her claim against Defendant WJC for violations of Title IX 20 U.S.C. § 1681(a), seeks reasonable attorney's fees to be recovered and collected as part of the costs.

WHEREFORE, Plaintiff prays for judgment under Count II against Defendant William Jewell College in an amount that represents a reasonable sum for attorney fees, for her costs herein incurred, and for all other and further damages as may be appropriate or to which she may be entitled at law.

## COUNT III
## Negligent Failure to Protect

COMES NOW Plaintiff, and for Count III of her Complaint against Defendant William Jewell College, states and alleges as follows:

105.     Plaintiff hereby incorporates each of the preceding paragraphs as though fully set forth herein.

106.     Defendant WJC knew or should have known of Z.P.'s dangerous propensities toward females, and particularly toward female students of WJC.

107.     Defendant WJC had actual knowledge of Z.P's on-campus sexual harassment of at least one other female student at WJC before his sexual assault of Plaintiff.

108.     Based on the foregoing, Defendant WJC knew or should have known that Z.P. posed a threat to female students on the campus of WJC.

109.     Defendant WJC had a duty to provide reasonable protection to Plaintiff as a student assigned to one of WJC's dormitories.

110.     By assuming the duty to perform room checks pursuant to WJC's policies and procedures, WJC took charge of its dormitory residents and assumed the duty to protect them from sexual assault in the dormitories.

111.     Defendant WJC breached this duty in the following respects:

   a.   Negligently and carelessly failing to perform room checks;

   b.   Negligently and carelessly failing to perform room checks as required by WJC's policies and procedures;

   c.   Negligently and carelessly failing to remove Z.P. from Browning Hall despite knowledge of his dangerous propensities toward female students of WJC;

   d.   Negligently and carelessly failing to remove Z.P. from campus despite knowledge of his dangerous propensities toward female students of WJC;

   e.   Negligently and carelessly allowing male students, including Z.P., unimpeded access to the floors and halls occupied by female students in Browning Hall;

   f.   Negligently and carelessly failing to lock the doors located at each end of the women's floor despite having given keys to each resident on the women's floor and assurances that said doors would be locked after 10:00 p.m. every night;

   g.   Negligently and carelessly failing in other particulars presently unknown which are believed will be discovered through discovery in this matter.

112.     As a direct and proximate result of Defendant WJC's negligence as stated herein, Plaintiff was sexually assaulted and raped by Z.P.

113.     As a direct and proximate result of Defendant WJC's negligence as stated herein, Plaintiff has suffered and continues to suffer significant, severe, and ongoing emotional distress, pain and suffering, and her studies and education have suffered substantially. As set forth above, Plaintiff has been forced to withdraw from her education at WJC.

20

114.     As a direct and proximate result of Defendant WJC's negligence as stated herein, Plaintiff suffered special damages in the form of medical treatment/expenses and will suffer additional special damages in the future, the amount and extent of which cannot be determined at this time.

WHEREFORE, Plaintiff prays for judgment under Count III against Defendant William Jewell College for a sum in excess of $75,000, for her costs herein incurred, and for all other and further damages as may be appropriate or to which she may be entitled at law.

**COUNT IV**
**Premises Liability**

COMES NOW Plaintiff, and for Count IV of her Complaint against Defendant William Jewell College, states and alleges as follows:

115.     Plaintiff hereby incorporates each of the preceding paragraphs as though fully set forth herein.

116.     At all times relevant to this action, Defendant WJC, possessed, owned, and controlled the school campus, including the dormitory hall where Plaintiff was raped by a fellow student and resident of the same dormitory, Z.P.

117.     At all times relevant to this action, Defendant exposed its students to dangerous conditions on its premises, as more thoroughly set forth below.

118.     During all times relevant herein and prior to Plaintiff being raped by Z.P., Defendant's premises had an unsafe condition in the form of Z.P., who WJC allowed to be on campus, despite knowing and / or having reason to believe of Z.P. posed a threat to female students on the campus of WJC.

119.     Aside from Z.P. constituting an unsafe condition of the premises, Defendant failed to maintain adequate monitors, policing, room checks, hallway locks, and maintenance of its

21

dormitory halls in a manner which would have prevented its residents from being sexually assaulted.

120.    Defendant had a duty to protect its students and residents of its dormitory, including specifically Plaintiff. from foreseeable injury as a result of the unsafe conditions located upon its premises.

121.    Defendant failed to protect Plaintiff.

122.    As a result of these unsafe conditions, Plaintiff was raped.

123.    Defendant had the authority, right and power to control its premises, as well as the activities of its residents, including Z.P.

124.    Defendant knew or had reason to know of the propensity or proclivity of Z.P. to engage in sexual violence and / or sexual misconduct.

125.    Defendant failed to exercise control or take appropriate action to supervise and monitor Z.P., and further failed to exercise control, authority, and supervision over its employees / RAs tasked with ensuring the safety of its on-campus dormitories, and further failed to maintain adequate monitors, policing, room checks, hallway locks, and maintenance of its dormitory halls in a manner which would have prevented its residents from being sexually assaulted.

126.    As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff has suffered and continues to suffer significant, severe, and ongoing emotional distress, pain and suffering, and her studies and education have suffered substantially.  As set forth above, Plaintiff has been forced to withdraw from her education at WJC.  Further, and as a direct and proximate result of Defendant WJC's wrongful conduct, Plaintiff has suffered special damages in the form of medical treatment / expenses, and will suffer additional special damages in the future, the amount and extent of which cannot be determined at this time.

WHEREFORE, Plaintiff prays for judgment under Count IV against Defendant William Jewell College for a sum in excess of $75,000, for her costs herein incurred, and for all other and further damages as may be appropriate or to which she may be entitled at law.

**COUNT V**
**<u>Negligent Supervision</u>**

COMES NOW Plaintiff, and for Count V of her Complaint against Defendant William Jewell Colleges states and alleges as follows,

127.     Plaintiff hereby incorporates each of the preceding paragraphs as though full set forth herein.

128.     By requiring students like Plaintiff to reside in its dormitory halls, by maintaining RAs and RDs to supervise and care for WJC's student dormitory residents, by implementing policies and procedures, including the knock and check room policy, and through other acts and representations, Defendant had and / or assumed a duty to protect students studying and living on its campus.

129.     At all times relevant herein, Defendant employed / supervised its RAs who were responsible for the supervision and care of WJC student dormitory residents.

130.     At all times relevant herein, Defendant owned, operated and / or controlled the WJC campus and its dormitories, including Browning Hall.

131.     At all times relevant herein, Defendant and its RAs, RDs, employees, and administrators were charged with and assumed the authority and duty to control, direct, and supervise its dormitory residents, including Z.P.

132.     As described above, by assuming the duty to perform room checks through its RAs and other employees pursuant to WJC's policies and procedures, WJC took charge of its dormitory residents and assumed the duty to protect them from sexual assault in the dormitories.

23

133.    Defendant and its RAs, employees, and administrators knew or should have known of its resident, Z.P.'s, previous sexual misconduct within the boundaries and under their supervision, and that future harm was certain or substantially certain to result without proper supervision.

134.    Defendant failed to enforce its own policies with regard to supervision of its dormitory residents, despite knowledge of the risk inherent in failing to do so.

135.    Defendant breached its duty of care to its student and dormitory resident, Plaintiff.

136.    Defendant breached its duty of care by failing to supervise its dormitory resident, Z.P., as well as its employees, RAs, RDs, and administrators tasked with supervising the dormitories.

137.    Defendant disregarded the known risk of sexual abuse and violence in its dormitories.

138.    Defendant's actions / inactions caused injury and damages to Plaintiff.

139.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered and continues to suffer significant, severe, and ongoing emotional distress, pain and suffering, and her studies and education have suffered substantially.  As set forth above, Plaintiff has been forced to withdraw from her education at WJC.  Further, and as a direct and proximate result of Defendant WJC's wrongful conduct, Plaintiff has suffered special damages in the form of medical treatment / expenses, and will suffer additional special damages in the future, the amount and extent of which cannot be determined at this time.

WHEREFORE, Plaintiff prays for judgment under Count V against Defendant William Jewell College for a sum in excess of $75,000, for her costs herein incurred, and for all other and further damages as may be appropriate or to which she may be entitled at law.

24

## COUNT VI
## Administrative Negligence

COMES NOW Plaintiff, and for Count VI of her Complaint against Defendant William Jewell College, states and alleges as follows:

140.    Plaintiff hereby incorporates each of the preceding paragraphs as though fully set forth herein.

141.    As a result of the relationship existing between Defendant WJC and Plaintiff as described above, Defendant WJC had a duty to exercise and furnish such degree of care as a reasonably prudent educational institution would have provided to Plaintiff under similar circumstances.

142.    Defendant WJC failed to use that degree of care ordinarily used under similar circumstances by educational institutions and otherwise breached its duty of care and was negligence in the following particulars:

   a.  Negligently and carelessly failing to promulgate adequate and necessary policies and/or procedures regarding the safety of students in on-campus housing facilities;

   b.  Negligently and carelessly failing to promulgate adequate and necessary policies and/or procedures regarding the safety of female students living in on-campus, co-ed dormitories;

   c.  Negligently and carelessly failing to promulgate adequate and necessary policies and/or procedures regarding the protection of students from sexual harassment and/or sexual assault;

25

d.   Negligently and carelessly failing to provide adequate and necessary training and instruction to its employees, agents, and/or servants regarding the safety of students in on-campus housing facilities;

e.   Negligently and carelessly failing to provide adequate and necessary training and instruction to its employees, agents, and/or servants regarding the safety of female students living in on-campus, co-ed dormitories;

f.   Negligently and carelessly failing to provide adequate and necessary training and instruction to its employees, agents, and/or servants regarding the protection of students from sexual harassment and/or sexual assault;

g.   Negligently and carelessly failing to provide adequate and necessary training and instruction to its employees, agents, and/or servants regarding recognizing and identifying sexual harassment and/or sexual assault and how to properly respond to and report the same;

h.   Negligently and carelessly failing to enforce and comply with its policies and/or procedures regarding the safety of students in on-campus housing facilities;

i.   Negligently and carelessly failing to enforce and comply with its policies and/or procedures regarding the safety of female students living in on-campus, co-ed dormitories;

j.   Negligently and carelessly failing to enforce and comply with its policies and/or procedures regarding the protection of students from sexual harassment and/or sexual assault;

k.   Negligently and carelessly failing to adhere to the requisite standards of due care and skill required and observed by similarly situated educational institutions in further particulars presently unknown to Plaintiff.

26

143.     As a direct and proximate result of Defendant WJC's negligence as stated herein, Plaintiff was sexually assaulted and raped by Z.P.

144.     As a direct and proximate result of Defendant WJC's negligence as stated herein, Plaintiff has suffered and continues to suffer significant, severe, and ongoing emotional distress, pain and suffering, and her studies and education have suffered substantially.  As set forth above, Plaintiff has been forced to withdraw from her education at WJC.

145.     As a direct and proximate result of Defendant WJC's negligence as stated herein, Plaintiff suffered special damages in the form of medical treatment/expenses and will suffer additional special damages in the future, the amount and extent of which cannot be determined at this time.

WHEREFORE, Plaintiff prays for judgment under Count VI against Defendant William Jewell College for a sum in excess of $75,000, for her costs herein incurred, and for all other and further damages as may be appropriate or to which she may be entitled at law.

## COUNT VII
## Breach of Fiduciary Duty

COMES NOW Plaintiff, and for Count VII of her Complaint against Defendant William Jewell College, states and alleges as follows:

146.     Plaintiff hereby incorporates each of the preceding paragraphs as though fully set forth herein.

147.     At all times alleged herein, Plaintiff was a student and resident of Defendant WJC's on-campus dormitory, Browning Hall.

148.     At all times alleged herein, WJC required its freshmen students, including Plaintiff, to live in its on-campus dormitories.

149.    Defendant WJC assigned Plaintiff to Browning Hall to reside there while she remained a full-time student.

150.    At all times alleged herein, Z.P. was another student assigned by Defendant to reside in Browning Hall.

151.    Defendant WJC maintained, ownership, possession, and control over Plaintiff's dormitory, and maintained the ability and authority to control and supervise its residents that resided in its dormitories, including Plaintiff and Z.P.

152.    While residing in the on-campus dormitories, the dormitory residents, including Plaintiff, were required to abide by WJC's rules and regulations for residing in the dormitories.

153.    As part of its rules and regulations for the control and supervision of its residents, and as set forth above, WJC instituted a knock and check policy performed by its RAs and/or RDs to knock and check on each dormitory room and its residents so as to ensure the safety of its residents.

154.    Plaintiff, as a female and resident of Browning Hall, put her trust and confidence in WJC's policies and procedures, including its knock and check policy, that WJC would abide by said rules and procedures which it both created and promised to perform, to protect its residents of its dormitories.

155.    By requiring its freshmen, such as Z.P. and Plaintiff to reside in its dormitories, in maintaining ownership, possession, and control over Plaintiff's dormitory and its residents, including Plaintiff, by assuming the authority and duty to control, direct, and supervise the conduct of its residents, and by promising to them that it would enforce its own policies and procedures expressly designed to ensure the safety of its residents from sexual assault in its dormitories, a fiduciary relationship existed between Plaintiff and Defendant WJC.

28

156.    As previously described above, by failing to perform or abide by its own rules and procedures, including its knock and check policy, Defendant breached its fiduciary duty to Plaintiff.

157.    As a direct and proximate result of Defendant WJC's breach of its fiduciary duty to Plaintiff as stated herein, Plaintiff has suffered and continues to suffer significant, severe, and ongoing emotional distress, pain and suffering, and her studies and education have suffered substantially. As set forth above, Plaintiff has been forced to withdraw from her education at WJC.

158.    Further, as a direct and proximate result of Defendant WJC's breach of its fiduciary duty to Plaintiff as stated herein, Plaintiff suffered special damages in the form of medical treatment/expenses and will suffer additional special damages in the future, the amount and extent of which cannot be determined at this time.

WHEREFORE, Plaintiff prays for judgment under Count VII against Defendant William Jewell College for a sum in excess of $75,000, for her costs herein incurred, and for all other and further damages as may be appropriate or to which she may be entitled at law.

## COUNT VIII
## Punitive Damages

COMES NOW Plaintiff, and for Count VIII of her Complaint against Defendant William Jewell College, states and alleges as follows:

159.    Plaintiff hereby incorporates each of the preceding paragraphs as though fully set forth herein.

160.    At all times alleged herein, Defendant WJC and Defendant WJC's employees, agents, and/or servants acted in a willful, wanton, fraudulent, and/or malicious manner toward Plaintiff and other similarly situated.

29

161.    At all times alleged herein, Defendant WJC and Defendant WJC's employees, agents, and/or servants knew or had reason to know that Z.P. presented a high probability of injury to additional female students.

162.    At all times alleged herein, the conduct of Defendant WJC and Defendant WJC's employees, agents, and/or servants showed a complete indifference to and conscious disregard for the safety of Plaintiff and others similarly situated.

163.    As a result of Defendant WJC's actions, Plaintiff suffered injuries, including physical injuries, psychiatric injuries, and financial harm, and will in the future continue to suffer harm as a result of these actions.

WHEREFORE, Plaintiff prays for judgment under Count VIII against Defendant William Jewell College for a sum in excess of $75,000, for her costs herein incurred, and for all other and further damages as may be appropriate or to which she may be entitled at law.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial.

WHEREFORE, Plaintiff seeks a judgment against Defendant as follows:

1.    Injunctive relief requiring WJC to redress its violations of Title IX, including (1) instituting, with the assistance of outside experts, and enforcing a comprehensive sexual harassment policy which includes procedures for effective reporting of sexual harassment incidents, effective and immediate crisis response, and expanded victim assistance and protection; (2) distributing written policies to all students describing prohibited activities and conduct and the consequences for violations; (3) adopting a "zero tolerance policy" under which there will be expedited proceedings and punishment proportional to the offense for violations of sexual harassment policies; and (4) providing for an annual, independent review by the Provost's and/or

30

President's office, with the participation of outside reviewers, of compliance with the sexual harassment and student recruiting policies;

2.      An award of damages against Defendant for a sum to be determined at trial, including, without limitation, reimbursement and prepayment of all of Plaintiff's tuition or related expenses; payment of Plaintiff's expenses incurred as a consequence of the sexual assault, as well as any and all future expenses reasonably expected to be incurred in the future; damages for deprivation of equal access to the educational benefits and opportunities provided by William Jewel College; and damages for past, present and future enjoyment of life and pain and suffering in an amount to be determined by the jury;

3.      Punitive or exemplary damages;

4.      Interest on all sums awarded as provided for by law;

5.      An award of costs and attorney fees (pursuant to 42 U.S.C. § 1988(b)); and

6.      Any other relief as is proper.


**HARRIS AND HART, LLC**

_____
Brette S. Hart                          #57593
Bradley L. Akins                        #62717
Matthew W. Greenberg                    #66434
9260 Glenwood Street
Overland Park, Kansas 66212
(913) 213-6980/FAX (913) 213-6991
bhart@harrisandhart.com
bakins@harrisandhart.com
mgreenberg@harrisandhart.com
ATTORNEYS FOR PLAINTIFF

31